(619 P.2d 1171)

No. 51,103

CLARENCE M. TRENT and RUTH TRENT, *Appellants,* v. CITY OF PITTSBURG, KANSAS, *Appellee.*

Opinion filed November 26, 1980.

*Christine E. Fogliasso* of Grotheer & Grotheer, of Pittsburg, for the appellants.

*Charles Menghini* of Menghini & Menghini, of Pittsburg, for the appellee.

Before FOTH, C.J., REES, J., and HARMAN, C.J. Retired, sitting by designation.

HARMAN, C.J. Retired: This is a declaratory judgment action in which the plaintiffs sought a ruling that their use of a small building on their residential property was not violative of municipal zoning ordinances. They appeal from an adverse decision.

The matter was submitted to the trial court upon the pleadings and an agreed statement of facts. The parties have, in their briefs and upon oral argument, enlarged somewhat upon these facts but they remain in harmony as to these statements.

In April, 1977, complaint was made by zoning officials of the city of Pittsburg that the plaintiffs Clarence M. Trent and Ruth Trent were violating zoning ordinances of the city of Pittsburg in that they had converted a detached accessory building into a rental dwelling. Thereafter plaintiffs commenced this action.

The small building concerning which complaint was made is situated on the rear of plaintiffs' lot in Pittsburg, zoned R-1, Single-Family Residential District, on which lot the residence occupied by plaintiffs is located. The subject building was formerly used as living quarters by house servants of the previous

owner of the premises. In 1956 the building was vacated and thereafter it was used as a tool and storage building. In 1966 plaintiffs purchased the property and obtained a building permit to have the building renovated. It was initially planned to be used as a home for the mother of plaintiff Clarence Trent but this never developed. The renovation, which did not change the dimensions or essential character of the building, was completed in 1976.

The building was later occupied by a married couple as rent-paying tenants of plaintiffs. They are students at Pittsburg State University. They serve as "caretakers" of the main house in that they "watch" it while plaintiffs are away from Pittsburg for two or three months per year. This use of the building triggered the complaint.

The trial court ruled that the use of the building as servant living quarters prior to 1956 was a nonconforming use under city ordinances but that this right had been terminated by voluntary abandonment, and it held generally for the city.

Pertinent city ordinances provide:

"24-402 DEFINITIONS.

"a. Accessory Building—A detached subordinate building, located on the same lot with the main building, the use of which is incidental to the main building or to the main use of the premises.

"b. Accessory Use—Any use which is incidental to and subordinate to the main use of the premises.

. . .

"ff. Lot—Any parcel of land occupied or intended for occupancy by one main building together with the accessory buildings and customary uses incident thereto . . . ."

"24-406 UNLAWFUL USE OF LAND. Except as provided, it shall be unlawful to use any land or building for any purpose other than is permitted in the district in which such land or building is located. The lawful use of land or buildings existing at the time of the passage of this ordinance, although such does not conform to the regulations, may be continued. A nonconforming building, structure or portion thereof, which is or hereafter becomes vacant and remains unoccupied for a continuous period of six (6) months shall not thereafter be occupied except by the uses which conform to the use regulations of the district in which it is located."

"24-408 ZONING DISTRICTS.

. . .

"b. RESIDENTIAL DISTRICTS

"(1) R-1 SINGLE-FAMILY RESIDENTIAL DISTRICT

"(a) Uses Permitted:

"1. Single-family dwellings.

. . .

"*6.* Accessory buildings and uses customarily incident to the above uses, including a private garage, all being located on the same lot and not involving the conduct of a business other than herein authorized. Any accessory building that is not a part of the primary use structure must be located in the rear yard.

. . .

"*9.* Student Roomer - not to exceed two (2) per dwelling."

Plaintiffs first contend that the initial use of the building as living quarters for house servants was not a nonconforming use under the ordinances; instead, it was an accessory building because its use was incidental to the main use of the premises. We agree.

Black's Law Dictionary (4th ed. rev. 1968) defines the term "incidental": "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." This would appear to be the common, everyday meaning of the term as it is generally understood. Surely a small building providing living quarters for house servants for the premises (principal residence, garden, yard, garage and the like) is incidental to the use and enjoyment of those premises. It would appear the use of the building here *up to 1956* would be in conformity as an accessory building. Abandonment, or not, of that use becomes immaterial.

This conclusion is not determinative nor dispositive of this appeal. The parties have agreed completely on the facts, the plaintiffs have briefed their further position, and it is within our province to determine if they should prevail.

Plaintiffs assert there is nothing in the ordinances prohibiting the use of more than one single-family dwelling. We cannot agree. Without taking into account space requirements (which we have not quoted), we think the ordinances, fairly read together, clearly contemplate that not more than one single-family residence shall be maintained on one lot. We deal here with one lot. Under the definition section of the ordinance, a lot is to be occupied by *one* main building, together with accessory buildings. A single-family dwelling house is the *main* building on a lot in an R-1 residential district and any other buildings are to be accessory. More than one single-family dwelling on an R-1 lot would be violative of the ordinance unless it could be tolerated as an accessory structure as in the pre-1956 use for servant quarters.

Plaintiffs further contend their use of the small dwelling is

conforming because it is a home for the caretakers of the main house in that they watch it while plaintiffs are away from Pittsburg for two or three months per year. No argument beyond the mere statement is offered. We think a glance now and then by these rent-paying tenants, or whatever else might be legitimately inferred from this sparse statement, is too tenuous a condition of servitude to convert the building into an accessory one under the ordinances.

Finally, plaintiffs urge that because these two tenants attend school at Pittsburg State, they are student-roomers—a permissible R-1 use. We think a fair reading of the ordinance is that the main building, a single-family dwelling, may be used to house one or two student roomers. They may not reside in another building on the premises. Moreover, an R-1 lot cannot contain a building involving the conduct of a business, with exceptions not here applicable.

The trial court held in favor of the city. Within the guidelines stated herein, its judgment denying injunctive relief must be upheld. Judgment affirmed.